# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| ERIC TUTTOBENE; TIMOTHY MARK BYRD; ROBERT SOUVANNARETH; WILLIAM F. KYTE; JEANNIE POND; DERROLD NASH; ANTHONY PETITTI, JR.; JAMES CHANDLER BECK;  J. REID CARLETON; JEFF HEYBROCK; TODD BOE; GREGORY TODD BYRD; SAMUEL ALLEN BARE; MICHAEL ANDERSON; CARISSA BROWN; JASON FISHEL; COLIN KEITH HOLLEY; HARMON G. PYE, III; MARK WILLARD; ROBERT GHIRINGHELLI; RONALD MARK GOSS; CHARLES MOORE, JR.; MARCHETA SAWYER; and MARCUS KIMES, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:10-0978 |
| | ) | Judge Sharp |
| THE ASSURANCE GROUP, INC, | ) ) | |
| Defendant. | ) | |

### MEMORANDUM

This is a diversity action filed by numerous Plaintiffs from various southeastern states, all of whom worked under an independent contractor agreement with Defendant, The Assurance Group, Inc. ("TAG"), a North Carolina corporation  Originally, there were fourteen Plaintiffs and they brought assorted state law claims, including claims against a handful of individual Defendants.

In a telephone conference with Magistrate Judge Brown on December 13, 2011, Plaintiffs' counsel indicated that Plaintiffs would drop the claims against the individual Defendants, as well as the claims for fraud against TAG.  Accordingly, Magistrate Judge Brown entered an Order, directing that Plaintiffs "file an amended complaint against TAG on or before January 20, 2012."

1

(Docket No. 47 at 1).

As instructed, Plaintiffs filed an Amended Complaint on January 20, 2012. However, the Amended Complaint added eleven new Plaintiffs, prompting TAG to file a Motion to Strike. (Docket No. 50). This was followed by TAG's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket No. 57). Both Motions have been fully briefed by the parties (Docket Nos. 50, 52, 59, 60).[1]

For purposes of the pending motions, only the briefest summary of Plaintiffs' allegations is necessary:

TAG operates an insurance brokerage firm that markets health and life insurance products and policies through independent sales agents, including the named Plaintiffs in this case. Plaintiffs assert that, following an initial "honeymoon" period in which they were paid the sums to which they were entitled, the payments were either suddenly reduced or stopped entirely; that, despite requests for an accounting of the funds handled by TAG, Plaintiffs have been unable to obtain a proper, itemized accounting; and that, while Plaintiffs have been provided copies of Internal Revenue Service 1099 Forms, those forms falsely reflect payments which have not actually been made. The upshot of Plaintiffs' claims is that TAG has collected commission from various insurance companies – commissions which, after deducting appropriate costs and handling charges were to be paid to Plaintiffs, but were not. They seek an accounting of the amounts properly due, and payments of

---

[1] TAG also filed a Motion to Dismiss the original Complaint. However, because the Complaint was amended, that Motion will be denied as moot. See, Drake v. City of Detroit, 266 Fed. Appx. 444, 448 (6th Cir. 2008) (prior "complaint is a nullity, because an amended complaint supercedes all prior complaints"); Gibson v. Mortgage Elec. Registration Sys., Inc.. 2012 WL 1601313 at *9 (W.D. Tenn. May 2, 2012) (footnote omitted, collecting cases) ("It is well-settled that an amended complaint supersedes the original complaint and renders the initial pleading a nullity," and "Courts in this Circuit and others will deny as moot Rule 12 motions to test the sufficiency of the pleadings after a plaintiff subsequently files an amended complaint").

2

those amounts.

## I. **MOTION TO STRIKE**

TAG moves to strike the Amended Complaint to the extent that it adds new Plaintiffs because the deadlines for adding new parties have long since expired. TAG points to the Initial Case Management Order (Docket No. 15) which set a January 31, 2011 deadline (or 30 days after the Court's ruling on the Motion to Dismiss), for adding new parties, and an August 17, 2011 Order from Magistrate Judge Brown which stated that "[a]ny motions to amend the pleadings, particularly to add additional parties, should be filed within 30 days of the entry of this order." (Docket No. 30 at 2).

In response, Plaintiffs argue their Amended Complaint, filed as it was on January 20, 2011, is in keeping with Magistrate Judge Brown's December 20, 2011 Order, which, as already indicated, "directed [Plaintiffs] to file an amended complaint against TAG on or before January 20, 2012." (Docket No. 47 at 2). They also claim that the December 20, 2011 Order authorized the filing of the Amended Complaint in accordance with a "conference in which the parties agreed before the Court that the amendment would be filed naming additional parties and deleting the fraud claims against the individually-named Defendants." (Docket No. 52 at 2).

This Court is not privy to exactly what transpired at the December 20, 2011 conference before Magistrate Judge Brown. However, any question about Magistrate Judge Brown's view of the propriety of adding new Plaintiffs by way of the Amended Complaint has been answered by an Order dated May 2, 2012 in which he wrote:

> Although the Magistrate Judge did not specifically discuss it with the parties during the telephone conference, the Magistrate Judge has considered the motion to strike. The motion to dismiss for lack of jurisdiction may have some impact on who can or cannot be a plaintiff in this matter. Accordingly, the Magistrate Judge has not

3

ruled on the motion.  <u>However, for planning purposes the parties should consider that
if there is jurisdiction over the new plaintiff[s], the Magistrate Judge is very likely
to deny the motion to strike as he believes that the Plaintiff[s'] response (Docket
Entry 52) is correct and the Magistrate Judge did direct the Plaintiff [s]to file an
amended complaint.</u>

(Docket No.  61 at 2) (emphasis added).

Like Magistrate Judge Brown, this Court reads the December 20, 2011 Order as allowing

Plaintiffs to file an Amended Complaint, including one that adds new Plaintiffs as parties.

Regardless, allowing the Amended Complaint to go forward as written is in keeping with the notion

that motions to amend should be freely given when justice so requires.  Fed R. Civ. P. 15(a)(2).  This

is particularly so since there has been no unwarranted delay, and TAG has not claimed prejudice.[2]

<u>See</u>, <u>Partner & Partner, Inc. v. ExxonMobil Oil Corp.</u>, 326 Fed. Appx. 892, (6th Cir. 2009) ("Delay

alone is not a sufficient reason to deny leave to amend, but notice and substantial prejudice are

critical factors in the determination").

## II. <u>MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>

As stated at the outset, this case invokes this Court's diversity jurisdiction.  So far as

relevant, the diversity statute provides:

(a) The district courts shall have original jurisdiction of all civil actions where the
matter in controversy exceeds the sum or value of $75,000, exclusive of interest and
costs, and is between –

(1) citizens of different States;

---

[2]  To the extent TAG may be fearful that it has squandered discovery on the claims raised by the
original Plaintiffs, Magistrate Judge Brown has stated that once this Court issues a ruling on the Motion to
Dismiss, "[a] case management conference will then be set in order to determine what will need to be done
in this case to complete discovery." (Docket No. 61).  Obviously, further discovery will have to take into
account any of the new Plaintiffs who remain after the Court issues the present ruling related to TAG's
Motion to Dismiss for Lack of Subject Matter Jurisdiction.

      \*      \*      \*

  (c) For the purposes of this section and section 1441 of this title–

> (1) a corporation shall be deemed to be a citizen of every State and
> foreign state by which it has been incorporated and of the State or
> foreign state where it has its principal place of business . . .

28 U.S.C. § 1332(a) & (c).

  The Amended Complaint alleges that TAG "is a North Carolina close corporation," albeit

one that is entitled to do business in Tennessee, and that eleven of the named Plaintiffs reside[3] in

North Carolina. (Docket No. 49, Amended Complaint ¶¶ B & C). The Amended Complaint also

alleges that the amount at issue for some of the Plaintiffs is far less than the $75,000 jurisdictional

minimum. In light of the fact that there is not complete diversity, TAG seeks dismissal of the entire

action. Alternatively, TAG argues that the non-diverse Plaintiffs should be dismissed, as well as

those Plaintiffs who do not plead damages which meet the minimum jurisdictional amount.

  Under Section 1332(a), "there must be complete diversity such that no plaintiff is a citizen

of the same state as any defendant." V & M Star, LP v. Centimark Corp., 596 F.3d 354, 355 (6th Cir.

2010); accord, Shea v. State Farm Ins. Co., 2 Fed. Appx. 478, 479 (6th Cir. 2001). The Supreme

Court in Exxon Mobil Corp. v. Allapattah Serv., Inc., 545 U.S. 546 (2005) explained:

> The district courts of the United States, as we have said many times, are
> "courts of limited jurisdiction. They possess only that power authorized by
> Constitution and statute," Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S.

---

[3] "It is well-settled that, for purposes of diversity jurisdiction, citizenship means domicile, not residence," Pierro v. Kugel, 386 Fed. Appx. 308, 309 (3rd Cir. 2010), and that "[d]omicile is not synonymous with residence." Milona Valle Del Cibao v. Lama, 633 F.3d 1330, 1341 (5th Cir. 2011). See, Deasy v. Louisville & Jefferson County Metro. Sewer Dist., 47 Fed. Appx. 726, 728 (6th Cir. 2002) ("To establish the "citizenship" required for diversity jurisdiction, Deasy must show more than mere Tennessee residence. He must show that Tennessee is his domicile."). While the Amended Complaint in this case speaks in terms of the "residence" of each of the Plaintiffs, there is no suggestion that any of the eleven Plaintiffs who reside in North Carolina are not citizens of that state, and domiciled therein.

5

375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). . . . In order to provide a neutral forum for what have come to be known as diversity cases, Congress . . . has granted district courts original jurisdiction in civil actions between citizens of different States[. ] . . .

*        *        *

. . . [W]e have consistently interpreted § 1332 as requiring complete diversity: In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action. Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435 (1806); Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 375, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). The complete diversity requirement is not mandated by the Constitution, State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 530–531, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967), or by the plain text of § 1332(a). The Court, nonetheless, has adhered to the complete diversity rule in light of the purpose of the diversity requirement, which is to provide a federal forum for important disputes where state courts might favor, or be perceived as favoring, home-state litigants. The presence of parties from the same State on both sides of a case dispels this concern, eliminating a principal reason for conferring § 1332 jurisdiction over any of the claims in the action. See Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 389, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); Newman–Green, Inc. v. Alfonzo–Larrain, 490 U.S. 826, 829, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). . . . Incomplete diversity destroys original jurisdiction with respect to all claims, so there is nothing to which supplemental jurisdiction can adhere.

Id. at 552-554.

In this case, there is no dispute there is an absence of complete diversity since eleven of the Plaintiffs are citizens of the state in which TAG is incorporated. It does not follow, however, that this entire action must be dismissed for lack of diversity, and this remains so notwithstanding TAG's reliance on the statement in Allapattah that "the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Id. at 553. As the United States Court of Appeals for the District of Columbia recently observed:

It might be thought that the ability to dismiss nondiverse parties and retain

6

jurisdiction over the rest of the case is in tension with . . . <u>Allapattah</u>'s holding that the presence of a nondiverse party "contaminates" the entire action, therefore stripping the district court of jurisdiction in toto. This tension is resolved through the fiction that Rule 21 relates back to the date of the complaint. <u>See</u> <u>LeBlanc v. Cleveland</u>, 248 F.3d 95, 99 (2d Cir.2001). This way, the court may proceed as if the nondiverse parties were never part of the case. With those parties effectively scrubbed from the complaint, they are not present to contaminate the other claims.

<u>In re Lorazepan & Clorazepate Antitrust Litig.</u>, 631 F.3d 537, 543 (D.C. Cir. 2011).

Dismissing the nondiverse parties pursuant to Fed. R. Civ. P. 21, and proceeding as if they were never a part of the case, finds support in Supreme Court precedent. In <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567, 572 (2004), the Supreme Court noted that, while diversity jurisdiction is generally determined as of the time the complaint is filed, dismissing a party who destroys diversity has "long been an exception to the time-of-filing rule." The Court then wrote:

.   .   . "[T]he question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether . . . they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights may be made, the jurisdiction of the court should be retained and the suit dismissed as to them." <u>Horn v. Lockhart</u>, 17 Wall. 570, 579, 21 L.Ed. 657 (1873). Federal Rule of Civil Procedure 21 provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." By now, "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." <u>Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 U.S. 826, 832, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989).

<u>Id</u>. at 572-73; <u>see</u>, <u>AmSouth Bank v. Dale</u>, 386 F.3d 763, 777 (6th Cir. 2004) (dismissal of non-diverse defendant can cure jurisdictional defect and "[t]his dismissal can be effected by the district court"); <u>Conelius v. U.S. Bank Nat'l Assoc.</u>, 452 Fed. Appx. 863, 865 (11th Cir. 2011) (where complaint showed that plaintiffs and some of defendants were citizens of same state, district court has discretionary "authority to dismiss a party who spoils complete diversity"); <u>Doe v. Exxon Mobil Corp.</u>, 654 F.3d 11, 71 D.C. Cir. 2011) (citation omitted) (Rule 21 "permits dismissal of

7

'jurisdictional spoilers' and creates a 'fiction that [the dismissal] relates back to the date of the complaint'").

Here, the presence of the North Carolina Plaintiffs destroys complete diversity. Those Plaintiffs, however, are not indispensable in the sense that, under Rule 19, their absence will not preclude full relief to the remaining parties, nor will disposition of the action in their absence leave the remaining parities "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a); see, Molinos Valle, 633 F.3d at 1344 (whether a plaintiff is "an indispensable party to the action under Rule 19 [is] a finding that must be made before a Rule 21 dismissal of a nondiverse party is appropriate"); Universal Reins. Co. v. St. Paul Fire and Marine Ins. Co., 312 F.3d 82, 87 (2nd Cir. 2002) (Rule 19 "circumscribe[s]" a district court's decision to dismiss parties under Rule 21); Poulos v. Nicolaides, 241 Fed. Appx. 25, 26-27 (3rd Cir. 2007) (a party "cannot be 'indispensable' if it is not 'necessary'").

Accordingly, the Court will dismiss the claims of the North Carolina Plaintiffs: Timothy Mark Byrd, James Chandler Beck, J. Reid Carleton, Jeff Heybrock, Gregory Todd Byrd, Samuel Allen Bare, Michael Anderson, Jason Fishel, Mark Willard, Charles G. Moore, Jr. and Marcheta Sawyer.

That leaves for consideration whether the Plaintiffs who do not allege damages of at least $75,000 should also be dismissed.[4] Again, Allapattah provides guidance.

In Allapattah, the Supreme Court discussed the diversity statute and its interplay with 28 U.S.C. § 1367 which provides for supplement jurisdiction, and did so in conjunction with the

---

[4] One Plaintiff alleges only $50,000 in damages; three Plaintiffs allege damages of $10,000 or less, and three Plaintiffs fail to allege any amount of damages.

8

"contamination theory" which posits that "the inclusion of a claim or party falling outside the district court's original jurisdiction somehow contaminates every other claim in the complaint, depriving the court of original jurisdiction over any of these claims" Allapattah, 545 U.S. at 560. The Court wrote:

> It is fallacious to suppose, simply from the proposition that § 1332 imposes both the diversity requirement and the amount-in-controversy requirement, that the contamination theory germane to the former is also relevant to the latter. There is no inherent logical connection between the amount-in-controversy requirement and § 1332 diversity jurisdiction. After all, federal-question jurisdiction once had an amount-in-controversy requirement as well. If such a requirement were revived under § 1331, it is clear beyond peradventure that § 1367(a) provides supplemental jurisdiction over federal-question cases where some, but not all, of the federal-law claims involve a sufficient amount in controversy.

Allapattah, 545 U.S. at 562.

Ultimately, the Supreme Court in Allapattah concluded that, while a failure of complete diversity contaminates every claim in the action, the same cannot be said about the amount in controversy requirement. Id. at 564 & 566. Thus, "where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction." Id. at 549. See, Engstrom v. Mayfield, 195 Fed. Appx. 444, 448 (6th Cir. 2006) (following Allapattah and allowing court to exercise supplemental jurisdiction over claims brought by eight plaintiffs, only two of whom claimed damages in excess of $75,000).

To be sure, and as Allapattah recognizes, Section 1367(a)'s "broad grant of supplemental jurisdiction" is limited to "the same case or controversy." Allapattah, 545 U.S. at 558. "Claims

9

form part of the same case or controversy when they 'derive from a common nucleus of operative facts," Harper v. AutoAlliance, Intern., Inc., 392 F.3d 195, 209 (6th Cir. 2004), when the "claims arise from the same contract, dispute, or transaction," Packard v. Farmers Ins. Co., 423 Fed. Appx. 580, 583 (6th Cir. 2011), or "if they 'revolve around the same central fact pattern.'" Blakely v. United States, 276 F.3d 853, 861 (6th Cir. 2002) (quoting, White v. County of Newberry, 958 F.3d 168, 172 (4th Cir. 1993)). "In other words, if there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." Id. Still, the decision whether to exercise discretion is in the broad discretion of the Court, a discretion which is informed by weighing concerns such as comity, judicial economy, convenience and fairness. Gamel v. City of Cincinnati, 625 F.3d 949, 951 (6th Cir. 2010).

In this case, and after having fully considered the arguments of the parties, the Court finds it appropriate to exercise supplemental jurisdiction over the claims brought by the diverse Plaintiffs who allege damages of less than $75,000. While TAG argues that each of the Plaintiffs worked under separate contractual relationships, worked in different parts of the country and with different companies, agents and customers, and claim different amounts owed from different sales transactions for different periods, all Plaintiffs allege a common fact pattern, to wit, that TAG "owned a contractual duty to properly receive, account, record, and preserve the records pertaining to the commissioned funds entrusted to the Defendant for the Plaintiffs' benefit, and to thereafter pay, in a timely and reasonable manner, the net funds payable under the terms of the contract." (Docket No. 49, Amended Complaint ¶ IV B).

The Court acknowledges that each Plaintiff requests individual damages, but that may amount to little more than a calculation based upon a proper accounting. In any event, Plaintiffs

10

collectively request an adjudication that a fiduciary and contractual relationship exited between the parties that requires routine accounting of the funds received, and the appointment of a special master to evaluate the records and report to the Court the amounts due. Both as a matter of convenience and judicial economy, it would make little sense to parse out the claims of the diverse Plaintiffs. This is particularly so because TAG states that "the parties have engaged in extensive discovery, including depositions taken by the original Plaintiffs to the action," (Docket No. 50 at 2), and the majority of Plaintiffs who allege damages of $75,000 or less (or who fail to allege any amount) have been Plaintiffs since the inception of this case.

## III. CONCLUSION

On the basis of the foregoing, the Court will deny TAG's Motion to Strike Amended Complaint, and deny its Motion to Dismiss as moot. The Court will grant TAG's Motion to Dismiss for Lack of Subject Matter Jurisdiction only to the extent that it seeks dismissal of the North Carolina Plaintiffs.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

11